United States Court of Appeals for the 11th Circuit. Hear ye, hear ye, hear ye. The United States Court of Appeals for the 11th Circuit is now open according to law. God save the United States and this Honorable Court. Good morning, Mr. Icefield and Ms. Hoffman. I see that the two of you are back today for some more great arguments. We're here on the case of United States of America v. Carlton Potts. Mr. Icefield, are you ready to go? Yes, Your Honor. Thank you. Would you like to save four minutes for rebuttal? Yes, please. Wonderful. Begin. Thank you. May it please the Court. Tracy Driceville, Assistant Federal Public Defender on behalf of Carlton Potts. Remand is required in this case because there's no evidence that the district court understood that it had the authority to reduce Mr. Potts' sentence under the First Amendment. And there's no assurance that its one-sentence alternative ruling was not impacted by the threshold mistake of law. The government argued several erroneous theories in its response to Mr. Potts' 404 motion. The district court indicated that it had reviewed the probation office's report, which contained previously undisclosed disciplinary incidents to which Mr. Potts was not given the opportunity to respond. And what the district court did 16 months later in the Compassionate Release case cannot retrospectively be used to cure the errors that occurred in the 404 proceeding. So, I can jump ahead to the Compassionate Release if the Court likes, but I just want to go through some of the errors in the 404 proceeding first. Ms. Driceville, before you do that, let me ask you a question, though. Your client now has been Yes, Your Honor, that's correct. We have agreed in the supplemental briefing, I think both parties were in agreement that the request to reduce his term of imprisonment was mooted by the Compassionate Release grant, but Mr. Potts was also eligible for a reduction in the term of his supervised release from 10 years to eight years, which the district court gave no indication that it was aware of when it ruled on the motion for release under Section 404. And to narrow it further, the other conviction is already five years, so there's no reduction on the other conviction, it would only be on one from 10 to eight. Correct, Your Honor. In reality, yes. I mean, in theory, the district court could reduce it and make it run concurrently. But as a practical matter, it would have to be from 10 to eight on the one conviction. That's all we're talking about, 10 to eight on the one conviction. Yes, Your Honor. And I don't know that we've ever had a release like this. And there was a significant reduction. And it might be one thing if the district court hadn't said this in the Compassionate Release order, he reimposed the same terms of supervised release. Every case is unique. There's just not a case like this out there. And so we do have the intervening step. And he says, what I'm gonna do is give him 37 months on confinement. And then I'm gonna reimpose the same supervised release I had before. I understand your argument, he still thought he maybe didn't, whatever he thought, but he knew he had authority under Compassionate Release to change the supervised release. So why is it foolish not to remand here? I mean, it's clearly nothing's gonna change. Your Honor, I actually disagree. I'm not sure he did have the authority under Compassionate Release to reduce the terms. I'll accept that. Let's assume he didn't. Okay. But I'll accept that we're dealing with the earlier proceeding. And his order says, even if I do have authority, okay, his order says, even if I do have authority, after referring to the 3555A factors, and so I know it's one sentence, I reimpose the same release. He says, even if you're eligible for a sentence reduction on the First Step Act, the factors set forth in 3553A indicate that a sentence reduction is unwarranted under the facts and circumstances of this case. Why is that not sufficient under the facts and circumstances of this case, with 30 prior convictions? I mean, this is exactly the type defendant you wanna have supervised release for. Your Honor, I'll direct the court to the very first part of that sentence. It says, after consideration of the government's and the probation officer's probation's response. So the district court only considered the government's arguments in this case. This was not a case where Mr. Potts had filed a detailed motion articulating the 3553A factors. He filed a pro se one paragraph motion saying, I think I'm eligible for release, please give me a lawyer. The judge then solicits responses from probation and the government, and thereafter denies it. So this court has never affirmed a case where the district court merely encanted, I've considered the 3553A factors, and they hadn't been presented to him on the defendant's behalf. It's an entirely one-sided review. Can I ask you a question, because I guess one of the issues I have in this case is the initial assumption by the district court judge is that Mr. Potts was not eligible, period. Because the language, even if legally eligible, suggests that, well, he made a finding that he wasn't covered, it wasn't a covered offense. So as a matter of law, he erred, because everyone agrees now that he was covered under the First Step Act. I agree, Your Honor. And I think that alone requires reversal. But the problem is now we have an intervening action by the district court judge, which is the compassionate release. And he again reimposes in paragraph six of the compassionate release order, he again reimposes the term of supervised release. And I understand your argument that he believed he didn't have the authority at that moment in time to change the term of supervised release. But I guess my question is, he really did go through all the factors, the 3553A factors in the compassionate release order, correct? Your Honor, he did. And I actually think that that helps us here. And let me explain why. What happened and what may not be clear from the briefing is that that compassionate release order came through on a Sunday. Judge Middlebrooks, to his credit, was very concerned about Mr. Potts catching COVID and dying in prison. He said as much in the order. And so what he did expressly pursuant to the compassionate release statute was he converted the remaining three years that Mr. Potts had on his sentence, or to a term of supervised release with the condition of home detention. He expressly, he wasn't looking at supervision at all. He was trying to get this man out of prison so he didn't die. And when I say Mr. Potts was high risk, I think that's very clear from the record with all of his multiple medical provisions. And Judge Middlebrooks said, if I deny this motion, it could be catastrophic. And so all he did was convert the remaining term to home detention. And I think he did that to give the parties the benefit of the bargain. The government was adamant at the initial sentencing hearing, which focused exclusively on Mr. Potts' cooperation. The which meant that the judge could only go to the mandatory minimum. And the government said on the record with Mr. Potts' record, with this case, we would never go below 20 years. And so what the district court did, and I think the very last footnote of the government's compassionate release motion kind of geared him to this, was he said, what tools do I have to satisfy both parties? I can save Mr. Potts' life and give the government more or less the benefit of its bargain by not cutting his sentence below 20 years, because home confinement is still very restrictive. Is it your view, counsel, that we can look at this post hoc discussion about compassionate release? And if we look at it, it helps you? Or is it your view, we can't look at it at all? Oh, I don't, I don't think you should look at it at all, Your Honor, because I don't think we can impute what the court did 16 months later to what it was thinking in 404. And if the court looks at footnote one of the compassionate release order, the only mention of the First Step Act in that is when the district court says he found him ineligible. Let me ask you a different question. At the outset, you said in response to a question that Judge Lagoa asked you, you said if he makes a mistake of law about the initial question of eligibility, it necessarily, ineluctably requires a remand. And I guess I don't quite understand why a district court cannot give you two alternate holdings and say, A, I don't think he's eligible. But I'm not sure and the law of the First Step Act is surely in flux. So I'm going to assume for this and give you an alternative holding. And let me finish. And my alternative holding is that even having the discretion, I'm not prepared to do it because I've looked at the factors, he's got a long record, etc, etc, etc. Do you think under those circumstances, we are required to send it back? I think that would be a much harder case. And I will say I think it's different when we're statutory change versus a guidelines change. Because I know the court has the Keene statement, and we affirm all the time when district courts give us alternative rulings under the guidelines. But in that situation, there's really no question that the district court understood its authority because the guidelines are advisory. This court has a long history of remanding when it's unclear whether the district court understood its authority. We don't have a fulsome analysis of the 3553 factors here. And, and, and yesterday, yesterday, when we had this debate, it was fascinating. The problem there was the district court told us nothing. Ipsy Dixit do deny. And we talked about would it have been enough, if he had said in addition to that, that he had considered the 3553 factors and all of the operative circumstances, which puts this in an arguably somewhat different context procedurally, and factually than the other case, but you would have to concede that the court could certainly rule in the alternative. Well, I think he's eligible. Maybe I'm wrong about that. God knows the law is changing every day on the First Step Act. And so I'm going to answer the second question, assuming he is eligible. I'm not granting it because your answer is that could be enough under some circumstances, but not here, because it's not enough just to refer to 3553. Yes, Your Honor. And I, if I can just, I have two parts I want to highlight. I want to highlight the fact that nobody was talking about supervised release in the district court. Again, we have a pro se request to reduce the sentence while he's still incarcerated. So there's nothing in the record to suggest that supervised release was even on the district court's radar when he issued this ruling. And the second part is we have this entirely one sided review of the 3553 factors last night. Now, I went back and I reviewed the Eggersdorf opinion last night, because I think that is really as far as this court has gone in affirming kind of just a small, you know, minimal statement of reviewing of the 3553 factors. And the basis of that opinion is the court said they didn't want to elevate form over substance, right? Because in that in that case, it was very clear what the court had done. It was a three month distinction they were arguing about. We have said that there is no magic incantation, you don't have to articulate each and every single factor. It's sufficient to say, I've considered the factors, and I'm going to exercise my discretion, and I'm going to deny. It's sufficient to say that where the record backs it up. And so here, the record doesn't back it up, because the only thing before the court was the government's argument. But the government and the probation's responses articulated why the factors were weighed in favor of denying, and not allowing the discretion. But nobody advocated on behalf of the court wasn't obliged to appoint counsel, if he's not going to appoint counsel, the court must at least review more of the record. He doesn't even say he'd reviewed the PSI in this case, to go back and look at about 90% of these pro se motions. I believe a lot of them are your honor. And I think that's why the district court tries to get probation to give them something to respond to. I mean, I, I don't view this thing that probation is necessarily a government response. The probation tries to set forth the PSI. I mean, it seems to me here, the district court, got the probation to tell them something. Your honor, I'd have to respectfully disagree from a defense counsel's perspective, probation is not neutral. And probation put in four disciplinary incidents that were extremely minor, but Mr. Potts never had the point chance to count point that out. And nobody had the chance to point it out. Because there's no evidence that probation was ever provided to Mr. Potts. I don't, I believe even appellate counsel had to obtain it later on appeal. And, you know, the district court denied the motion before Mr. Potts pro se reply was even filed. So there were no 3553a factors mentioned in favor of a response. And just from a procedural matter, I think that that is very unfair in this case, if the court were to hold that the court is only entitled to review the government's 3553a factors, but has no obligation to look at the and this is why I said it helped us. I don't have you raised a procedural due process claim that you're trying to write. I mean, I'm trying to understand what you're saying. No, your honor, what the argument is that the court's review of the 3553a factors in this case wasn't sufficient. So I'm not raising a separate constitutional argument. But it was insufficient for the court to sell to consider only the government's motion and probation, and then issue this alternative denial, particularly. You've, you've gone over your time. So let's hear from Miss Hoffman and government. And you have four minutes remaining for rebuttal. Thank you. Thank you, Mr. Iso. Miss Hoffman. Thank you, your honors, Andrea Hoffman, on behalf of the United States. As Judge Marcus said, little Brooks in his order made a clear and distinct alternative ruling. And he made a clear and distinct alternative ruling not on a forum order, but in which he himself dictated, typed, etc. The words that he had considered the filings that are on record, clearly, he looked at, you know, he knows the existence of the defense's motion. And he's looked at the government's response, the probation memorandum, he's considered the 3553 factors, and he's examined the facts of this case. He was the original sentencing judge, he is aware of the entire penalty of this case. And as the Supreme Court acknowledged, in Chavez Mesa, where it was a forum order, the court's ticking of the correct boxes on that forum order, in the context of the record as a whole, and the fact that it was the same judge from the prior incident to this to the 3582 motion in Chavez Mesa, that that was sufficient. In Rita, for example, which Mr. Isabel cited yesterday, not today, but I'm sure it's in her brief as well. The court simply said that the sentencing guideline sentence was appropriate. And we upheld that. So the standard for what has been upheld in prior circumstances, where it is not purely, we're in this case, at a sentence reduction opportunity, that is, as I believe Judge Marcus said previously, a congressional grant of lenity. And so it cannot be that the 3553 factors are a greater requirement in this context than it would be in an original sentencing or an ordinary 3582 C2 reduction motion. The court in this case had a fulsome response by the government. I agree it was by the government, but there's three full pages of 3553 factors discussed. There's three cases in which the court hasn't been told, think about these. And then you have a probation memorandum, as Judge Hull mentioned, which the court accurately is informed that it has, that this defendant is eligible for relief and that the court has its discretion. Let me ask you a question about that. Don't you find it troubling that the court received this report from probation, never shared it with the defendant in the case, and may well have acted upon the assertions in there? Isn't this, this is kind of an ex parte communication. I'm not saying probation didn't have every right to do what it did here. And I'm not even commenting about the accuracy of what was contained in the report, but this is a case where the petitioner had no way of knowing, because it apparently wasn't shared with him, what was in the probation report, that the probation report had even been filed, and that what was said in it was obviously harmful to the position that he was urging. That's the sort of the twist in this case that you have, at least from my perspective. Why isn't that a problem? Well, Your Honor, there is case law about, as the probation memorandum itself says in the back of the last page of it, it reminds the court, as it's considering it under Jules, that if it wants to rely on anything in this that is considered to be new, that it would need to be produced. So the court is, again, reminded of what its obligations are, and one presumes that the court, I would assume we would presume as the court, just as we would a jury, does what it's instructed to do, or does what the law requires of it, that the court knows that it has to consider this in a very careful and sparing manner. And the fact that it wasn't produced to the defense counsel, or I believe to the government before the court ruled on the motion, would give us firm grounding that this court understood what its rules and obligations were, and that it didn't rely on the only new thing that could be arguably said. You would concede, of course, that if we started with a sentence from the beginning, a court could hardly proceed with the ex parte communication of a probation's report. Without sharing it with the defendant and the government and seeking comment, right? Your Honor, I believe under, I'm not sure if I understood your question, but if I can try this answer, if I haven't answered it fully, please let me know. Your Honor, under Jules, the court's obligation is if the probation memorandum contains new information, the most typical example of that is usually prison infraction records, as Mr. High School referenced. No, no, I guess what I was saying, if you were at the beginning of the story, and we were just starting with a sentence at the outset, the probation department will prepare a report, the PSI will be distributed to the defendant and his counsel and to the government as well, for the obvious reason that it's critical to how the court may go about its task, how it may calculate the guidelines, et cetera. No one would presume because the law is crystal clear and the statute's clear, you'd have to give that to the defendant. You couldn't sentence the defendant without sharing with him the probation department's report. This is a little bit different. I'm sorry? The original PSI, Your Honor, I absolutely agree. Yes. Yes. I'm not saying that this report is the same thing as the initial report. Probation wasn't obligated to give the court anything, although it was certainly appropriate to do so. The only thing that troubles me is the defendant was unaware of it and had no way to respond to it, and it contained information that harmed his position. And for all I know, the district judge may have relied on it. Can I tell from this order? Didn't you rely on it, Ms. Hoffman? Because he says it in the order, after considering. Your Honor, gentle going, you've beat me to it. But we have to assume, Your Honor, that the district court did rely on the memorandum in some context because he specifically referenced it. The difference would be is, one, I would hearken back to Judge Paul's point, which is Mr. Potts is not making this procedural argument, Your Honor. He's not challenging that the court inappropriately relied on something that it shouldn't have relied on. He did not file that, make that argument. It is made by Ms. Streisfeld today in oral argument for the first time that I'm aware of. So that was not, the Jewel's argument has not been presented to this court previous to today. That set aside, discussing the actual merits of the concept. In the course of this proceeding, the probation memorandum that's at issue here is a document, and he is an arm of the court. Ms. Streisfeld may not feel that the probation offices are impartial, but they are an arm of the court. They are not an arm of the government. They are not a branch of the entity seeking to prosecute. Now, setting that issue aside as well, this probation memorandum accurately captured what Judge Hall coalesced as the single issue in this case, which is on the second page, it set forth what the original sentencing parameters were for this defendant. And then it set forth the only modification that is available now for consideration. It correctly set forth the lowered penalties that would have been applicable had Jones already come down in the when it ruled. So it knew that there was a change from 10 to 8, because it's before the court. And it knew that from at least one authority, including the arm that argues to it, or that serves to it, that it had full discretion. And it therefore made as the court, as Judge Marcus was discussing a moment ago, appropriate alternative rulings. The law at the time that this court away from coming down. And this court ruled as it did, but it also ruled in the alternative. And in the alternative, it more than amply met the Chavez-Mesa, Rita, Edwards-Dorf, whichever standard you would like to consider, because it had the opportunity to fully consider. The fact, Ms. Dreisbosch used the phrase, it's not a fulsome enough discussion. There is no requirement in an original sentencing that the court give a fulsome discussion. What is required is that it be clear that the district court had exercised in an original sentencing, it's obligation to look at those factors, that obligation, which is created in 3582. But as we discussed yesterday, and I'd like to bring into the course of this case, this particular motion is traveling under a different provision of 3582 than any of the other cases that we had discussed here today, because those cases are all under provisions of C-1-2 or C-2. And this is a C-1-B, not a C-1-A motion. And in that provision in 3582, unlike three other places in that statute, there is no incorporation of the 3553 factors in that provision of 3582. Now, that is not to say that the court shouldn't look at those factors. It is, as the Jones opinion said, may look at those statute, and in this case, the Congressional Grant of Lenity. That not the Congressional Grant of Lenity 404 does not incorporate the 3553 factors. So what you have here is a court that is told, reminded what all of the factors are. They are all laid out in the government's provision. So the heading, the consideration, the category of each type of factor is laid out in the government's motion. Probation tells them accurately you had, fortunately, probation got it right. Told them accurately you have the discretion. Probation accurately told him what the difference is between 10 and 8. And the court didn't exercise it. And why the compassionate release memorandum becomes important is because this court has said in Patterson and other cases in the 404 first step context, that it is harmless when it makes an error of law, i.e. you were not eligible, when it has made an alternative ruling, and it is clear from the record. Let me ask you a question about that, looking at that post hoc explanation for granting the compassionate release. Ms. Drysdale says two things. She says, one, we really can't look at it at all because this post hoc discussion comes 16 months later. And therefore, it doesn't really reflect on what moved the district court to deny the first step act motion 16 months earlier. And second, in any event, it at least cuts both ways. I want to ask you about the first point that she raised. Is it appropriate for us to look at an explanation given in an arguably different context 16 months later in order to shed light on what the judge had in mind when he denied the first step act motion 16 months earlier? I think in the context of this case, where the court tells you that it had considered the 3553 factors, the 3553 factors had been well laid out, the court's analysis of those 3553 factors, I believe it's 19 months later, but many months later, 18 months or more later, is once again in alignment with the government's analysis of it and the reasonable interpretation of the court's acceptance of those factors, but for his medical health. All of the other factors which were of significant concern at the time of the 404B factor, this court continues to find this gentleman to be extraordinarily dangerous, deeply involved in, excuse me, let me rephrase the phrase extraordinarily dangerous. He has a tremendous criminal history record. And I apologize, I responded to Ms. Dryspool. And I don't know if I did that appropriately or inappropriately. But when I say dangerous, I mean the fact that this defendant and his crime was violent. He has an extremely long history of violence. He had guns involved. There are 30 convictions and 20 arrests that aren't part of those convictions. The court recounted these factors. And at the time that it was considering the 404B circumstance alone, long before a pandemic had happened, long before COVID was going, long before there was any consideration of the difference in his health concerns, those factors were sufficient to leave him in jail. At the time that it gets to the COVID release, the court is clear in its release motion that the playing field has changed because of the health issue. Now, this defendant had many of these health issues when he went into jail. He was HIV positive. He was HIV positive. And he committed these crimes. The 14 years in prison, his health, and the pandemic in the face of the second major problem of the first step back made this court change its mind at a later point in time. Why I think that this motion, this memorandum is useful to the court is in reaffirming that the court didn't feel like its first decision was wrong, i.e., the 404B decision was wrong. How we know that is it didn't have to have given a 37-month incarceration period. It didn't have to make the 10 years and five years of supervised release from the original order that it reimposed consecutive. It had the opportunity to fraction a different sentence, and the court chose not to. And so what that compassionate release memorandum does for us is, as Judge Hall mentioned, is show us that there is no reason to send this back. This court has made clear that in the context of this man with this history, both as to his crimes, his criminal history, his past conduct, and his current health concerns, that this is the appropriate sentence to issue. And it properly gave you a recognition that it made that a decision in the compassionate release stage. I see that I'm past my time. If there are any other questions that the court has, I would be happy to answer them. Otherwise, I would rest on my briefs and ask that you affirm the district court's order. Thank you, Ms. Hoffman. Ms. Dreisbruch? Thank you, Your Honor. And I apologize. I did not realize I did not unmute myself, so I apologize to the court and to Ms. Hoffman. First, we did raise jewels in the reply brief. As the court is aware, Mr. Potts filed his initial brief pro se. The Federal Public Defender's Office then moved to be appointed. And in the Federal Public Defender's reply brief, we did raise the jewels issue. So that is not being presented to the court for the first time here. I want to talk about 3582C1A. I think it's very important, as Judge Hall mentioned, this is all very new to us. And this was really the first case where I looked at section 404 and 3582C1A together. I don't think C1A would have authorized Judge Middlebrooks to reduce the term of supervised release if he had wanted to. And that is because section 3582C1A specifically talks about reducing the term of imprisonment. And it authorizes the additional term, as Judge Middlebrooks did here, to put him in home detention as an equivalent of imprisonment. But it at no point authorizes a district court to reduce a consecutive term of supervised release. So I don't think it's clear that even if Judge Middlebrooks had wanted to reduce the term of supervised release, he could have done it. And again, the only time he mentioned the first step back proceeding was when he says that he had previously found Mr. Potts ineligible for the 404. So I don't think that we can read anything into the 3582C2 motion to suggest that he wouldn't have granted 404. Are you sure you want us to write an opinion saying 3582C1A never authorizes the district court to change supervised release? Are you sure that's really what you want us to do? Well, Your Honor, my obligation right now is to Mr. Potts. But I'm just saying that in looking at this together, I think it's clear. So, I mean, that's your argument. It requires the whole Never. Can you ever do anything but let somebody out of jail under that C1A? I think it's unclear. And to the extent that we are speculating about what was in Judge Middlebrooks' mind, it's unclear whether he could have done it or not. Wouldn't that be, Ms. Dreisbach, a better way to put it? Yes. It's unclear what his power is. The issue really hasn't been joined effectively here in briefing. We don't have to resolve that question. No, not at all, Your Honor. But I think the government is asking this court to find that he made a conscious decision that he was never going to reduce supervised release. And I don't know. I think what they're arguing is just all of this is harmless error. I mean, you know, at the most, the whole thing, to the extent that's there, and I'm not even sure that's there. I mean, that's what just reeks, you know, that you've got harmless error going here. Your Honor, I would point the court to the Samuel decision that's in the supplemental brief. The government argued four different reasons why Mr. Potts was ineligible. The government says that the probation officer's memo said that he was eligible, but the court expressly rejected that. Let me ask you a different question, if I might. The petitioner had serious medical disabilities right on the front end when he was sentenced, and Judge Middlebrooks was fully aware of that. He was paraplegic. He was HIV positive, et cetera. Difficulty ambulating, all of these things. Was there any indication that his medical condition had changed in any way from the outset when Middlebrooks laid it all out and counsel laid all of this out to the time when the 404B application, the First Step Act was filed by the petitioner? Because I didn't see anything in the record that suggested there was any change in his condition. This is different from the question of the compassionate release later, because there were very powerful reasons to do exactly what Judge Middlebrooks did later. But I'm asking at the time when he filed his 404B petition under the Act, was there any indication his condition had changed or altered or worsened from what the court was fully aware of on the front end when it sentenced him? So Mr. Potts filed a pro se reply, which was not received by the court until after the court had denied the motion. And in his pro se reply, he mentioned that the prisons were overcrowded and he wasn't getting adequate medical care. And that is the only thing in the record on that issue. But that was received after the order had come in. Got it. Thank you. Thank you. I see I'm over my time. Yes. If I may just conclude, I just think that particularly on this case, where there was no discussion of supervised release, it was unclear if the court believed he could reduce it. I think that a more, I don't think that the court statement that he would consider the 3553A factors was sufficient, where the only thing in front of him had been advocated by an adverse party. So I would ask the court to reverse- Well, but in fairness, Ms. Dreisbold, the court had what the government wrote in response. But it also had what the petitioner asserted, which started the ball going in the first place. Admittedly, he was pro se, but it wouldn't be the first time to find a pro se litigant in a filing a very fulsome and compelling argument all by himself and without the help of counsel. But he did have the opportunity, and he did start the ball in motion, albeit uncounseled. Well, and not well, Judge. And I think that when this court, particularly in Eggersdorf, and I wasn't able to discern whether that was counseled or pro se, but that defendant had advocated on his own behalf. He had mentioned word for word the relevant 3553A factors. Mr. Potts' motion in this case falls far below that. And so to the extent there is any process in fairness in this procedure, this was not that case. Thank you very much. Thank you, Ms. Dreisbold. Thank you, Ms. Hoffman. We appreciate both of your arguments. Have a wonderful day. And thank you again for coming again today. Thank you.